# N. Y. SUPERIOR COURT.

## Alva J. Lord and others agt. E. J. Richmond and others.

A *sheriff* has no authority or right to employ an *auctioneer* to sell property upon execution levied upon by him and charge a *commission* therefor, in addition to his poundage, to be deducted from the proceeds of the sale.

Nor can a sheriff charge as a disbursement, after levying; and taking property upon execution, any sum for the services of a *watchman* to keep and take care of the property. There is no authority, any where, for either of these charges.

*Special Term, December* 1869.

APPLICATION to tax and allow amounts of sheriffs fees on execution.

EUGENE SMITH, *plaintiffs attorney, for the motion.*

FITHIAN, J. It appears from the papers in this case, submitted to me on behalf of the sheriff, that there came to him seven different executions on judgments in favor of different plaintiffs, of whom the plaintiffs above named were one. The plaintiffs' execution was No. six in the order in which they came to the sheriff. The executions prior to plaintiffs amounted in all, exclusive of interest, to $1,500.00. Plaintiffs execution was for $273.28. The first execution was delivered to the sheriff not earlier than the 27th of August; for that was the day when the first judgment was recovered. When the sheriff made a levy under any of these executions does not appear from any statement in behalf of the sheriff; but at some time, there was a levy made on a stock of brushes at defendants store, No. 506 Pearl street. The stock was sold out by the sheriff on the 12th of November, and realized in gross the sum of $2,350. From these proceeds

of the sale, the sheriff satisfied the first, second, third and fourth, in their order of the executions in his hands, and applied $290.16 on account of the fifth execution, amounting in the whole to $1,551.29.    The sheriff claims to retain the balance of the sale, viz., $798.71, as and for his fees and disbursements.    Plaintiffs in this action (No. 6), object to the amounts of this charge of the sheriff, and claim that sufficient of those monies retained should be paid to them to satisfy their judgment.

Of the items going to make up this bill of $798.71, one is a charge of five per cent. commission paid to an *auctioneer* for selling the goods, amounting to $117.50, and another is for paying a watchman for watching these goods one hundred days and nights, $600.    These two items are objected to; and I am of opinion the objection is well taken.    By statute the sheriff and his deputies (as many as he chooses to appoint) are authorized to act as auctioneers and sell goods levied upon at public auction.    And for this they are authorized to charge and retain certain fees called "poundage," which is another word for commissions.    This fee the sheriff has very properly charged and retained in this case. But I am not aware of any law authorizing the sheriff to employ an auctioneer to sell goods and pay him out of the fund double what the sheriff has a right to retain for himself for the same services.    This item must be stricken out. And the same as to the charge for employing *keepers.*    I am not aware of any statute authorizing the employing or paying "keepers" of goods or property levied upon on final execution.    On receiving an execution the duty of the sheriff is to levy at once on any property of the judgment debtor he can find.    And he may, if he choose, sell on *six days'* notice (as to personal property), or he may delay for sixty days; but if he does so delay, it is for his own convenience or that of the judgment debtor.    He has no right to charge the plaintiff in the execution with any expenses of such delay or deduct any such expense out of the fund.

Here is $600 charged by the sheriff for paying a man to watch $2,300 worth of goods held by him under a levy upon execution until such time as he shall be ready to sell, when probably for a sixth of that sum they could have been stored with responsible warehousemen.

In support of this charge of $600 there is presented to me two affidavits, sworn to by two persons, one of whom swears that he watched or had charge of the property in question one hundred days, and the other that he had such charge for one hundred nights. It also appears from other papers presented to me at the same time, in behalf of the sheriff, that the first judgment against the defendants was docketed August 27th, 1869, and the sheriff's sale of the property was on the 12th of November, 1869, so that assuming the sheriff to have received his executions and made his levy on the very day the first judgment was recovered, there was still but seventy-seven days elapsed until the sheriff disposed of the goods. It necessarily follows, therefore, that unless these two "keepers' kept and retained the possession of these goods *twenty-three* days after they were sold by the sheriff, or got possession of them the like number of days before there was any judgment against the owner, their *affidavits cannot be true.* There may be an explanation about this, but none appears in the papers before me. It possibly may be that the legitimate statutory fees of the sheriff are too small. In that case relief can be afforded by the legislature. But the courts cannot aid in sanctioning charges like these in question.

The sheriff's bill in this case must be taxed and allowed at $81.21, and the balance in his hands must be applied, first, in satisfaction of the balance unpaid on the execution in favor of Henry Collins *et al.* (No. 5), and then in satisfaction of plaintiffs execution if sufficient.